**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                            Case No.    11-20129

SCOTT WILLIAM SUTHERLAND et al.,

    Defendants.
_____/

**ORDER RESOLVING CERTAIN OBJECTIONS**

Before the court are several objections to the proposed jury instructions in this criminal matter. The parties and the court have been working on several versions of the instructions for some time,[1] but more specifically, over the last week, the parties have been intensely focused on reaching an agreed upon version of the instructions. The court has led several conferences with the attorneys and has given several off-the-record rulings in an effort to expedite the process. Many of these rulings were memorialized on the record during a January 9, 2015 status conference. The court then gave Defendants a deadline of midnight, January 11, 2015, to file all remaining objections to the current version of the instructions.[2] Defendants timely filed their

---

[1] As is the court's common practice, the court instructed the government to prepare their initial draft of the instructions, incorporating elements of the court's standard instructions, and instructed Defendants to focus their efforts on revising or objecting to the government's version. The government filed its initial draft and then, after the court so instructed, filed a revised version which more closely tracked the instructions given by another judge in this district in a similar case. To protect their rights, Defendants filed their own version of instructions, but have since that time been focused on revising the government's version.

[2] The court's staff later extended the deadline to noon on January 12, 2015.

objections. Counsel for both Defendants and the government have met several times since the filing, and have updated the court on the current status of negotiations. Some of the objections were resolved by agreement. The court now resolves the remaining objections.[3]

## I. DISCUSSION[4]

### A. Docket Number 1171

Defendants object to language on page 39 of the government's instructions that provides:

> If you find that there is a conspiracy, you may consider the acts and statements of any other member of the conspiracy during and in the furtherance of the conspiracy as evidence against a defendant whom you have found to be a member of it. When persons enter into a conspiracy, they become agents for each other, so that the act or statement of one conspirator during the existence of, and in furtherance of, the conspiracy is considered the act or statement of all the other conspirators and is evidence against them all.

(1/10/15, Working Draft Instructions at 39.) Specifically, Defendants' argument (correct as far as it goes), is that relevant Sixth Circuit case law provides that it is the judge, not the jury, who must decide wether co-conspirators' statements are admissible. *See United States v. Enright*, 579 F.2d 980, 986-87 (6th Cir. 1978). As confirmed during an off-the-record charge conference, the government offered to remove any reference to "statements" in this instruction in order to alleviate Defendants' concerns. In response, Defendants maintained that even the language referring to co-conspirator acts is improper, unnecessary, and would lead to jury confusion. The court disagrees. The

---

[3]The court has ordered additional briefing on a few remaining issues found in docket numbers 1180 and 1185.

[4]The first filed objection, Docket Number 1167, was resolved by agreement.

heart of Defendants' written objection was directed at the language in the instruction referring to "statements," and the government's proposal adequately remedies Defendants' concerns. The court does not find this instruction to be in any way improper and will not serve to confuse or mislead the jury. The court overrules the objection and allows the instruction subject to the deletion of any references to "statements."

### B. Docket Number 1172

Defendants next object to the government's recitation of Michigan law as to the elements of Second Degree Murder and Assault with Intent to Murder. Defendants seek the inclusion of the following element of second degree murder:

[(4) Third, that the killing was not justified, excused, or done under circumstances that reduce it to a lesser crime.] Mich. Crim. J.I.16.5 (brackets in original).

In the Michigan Model Criminal Jury Instructions, the bracketed language is followed by a footnote which contemplates omitting the justification instruction where "there is no evidence of justification or excuse, and the jury is not being instructed on manslaughter or any offense less than manslaughter." *Id.* at Use Note n.4. Indeed, the Supreme Court of Michigan requires the prosecution to prove the negative element of absence of circumstances of justification, excuse, or mitigation only "when a defendant introduces evidence that circumstances of justification, excuse, or mitigation exist . . . ." *People v. Dykhouse*, 345 N.W.2d 150, 158 n. 13 (Mich. 1984); *see also Burton v. Renico*, 391 F.3d 764, 779–80 (6th Cir. 2004) (noting a similar provision of the Michigan Pattern Jury Instructions that "specifically noted that an instruction regarding the element of absence of justification or mitigation was not required if no such evidence

3

had been proffered during trial"); *id.* at 780 ("[T]he weight of Michigan authority is that justification, excuse, and mitigation need not be disproved by the prosecutor in every case.").

Defendants also seek to expand the elements of Assault with Intent to Murder, by including the bracketed portion of the final element:

(4) Third, that the defendant intended to kill the person [he / she] assaulted [, and the circumstances did not legally excuse or reduce the crime]. Mich. Crim. J.I. 17.3 (brackets in original).

As with the Second Degree Murder instruction, this instruction is followed by a Use Note stating that "[w]here appropriate, give special instructions on particular defenses . . . , on mitigation . . . , and transferred intent . . . ." *Id.* at Use Note n.*.

It is clear that additional language is not appropriate here. The government's omission of both optional portions of the model instructions is consistent with Sixth Circuit precedent, Michigan Law, the Michigan Model Criminal Jury Instruction's Use Notes and the evidence adduced at trial. No defendant offered evidence in any alleged incident of this nature that could result in a finding of justifiable homicide, excusable homicide, mitigation, or transferred intent. In a conspiracy charge, in which inchoate offenses such as these intended or accomplished homicides are listed as examples of a RICO enterprise's intended activities, the jury is at least a step removed from determination of the elements of a completed offense in which concepts such as mitigation of degree or outright justification would be more clearly at issue. The potential for jury confusion is clear to the court. Defendants' objection is overruled.

## C. Docket Number 1173

Defendants also request a cautionary instruction regarding evidence brought in by the government to provide background context, such as evidence regarding a shooting in Cadillac, Michigan. The court finds this instruction to be unnecessary. In each circumstance where testimony was elicited regarding background information, the court gave a limiting instruction at the time. Moreover, in some cases, the evidence was submitted not simply for context but as substantive evidence of the conspiracy. The court made the appropriate limiting instructions throughout the trial and revisiting the issue at this stage would be overly confusing to the jury.

### D.  Docket Number 1174

In docket number 1174, Defendants submit their request for special verdict forms. The document is 62 pages long, but does not provide much analysis identifying and explaining how their proposed verdict forms differ from the governments. Nonetheless, the court has reviewed the forms and rejects them for the following reasons.

Defendants request that, if the jury finds a Defendant guilty, it be required to specifically identify the particular racketeering acts which it unanimously agrees the Defendant committed. There is no requirement that the particular racketeering act be identified. The court finds that requiring this extra step would lead to jury confusion in an already complicated trial. Defendants' suggestion would hinder, not aid, in the elucidation of issues. The request will be denied. Similarly, the court rejects a request to identify particular overt acts, either by handwriting the act or by checking off some sort of list. The court finds such identification is not required and would overly complicate the verdict forms.

Defendants also ask that the verdict include a reference to hydrocodone, which is included in the indictment but not in the government's proposed verdict form. Relatedly, Defendants argue in a separate objection, docket number 1178, that the jury instructions need to include reference to hydrocodone, rather than simply methamphetamine. The parties debate centers on the government's use of the conjunctive "and" in the indictment, charging a conspiracy with intent to distribute "methamphetamine and hydrocodone." Defendants argue that the government must prove the conjunctive, that both controlled substances were part of the conspiracy.

The government submits, and the court agrees, that well-settled law allows the government the "right to to charge in the conjunctive and prove in the disjunctive." *United States v. LaPointe*, 690 F.3d 434, 440 (6th Cir. 2012). This right "reflects the necessary discrepancies between indictments and jury instructions." *Id.; see also United States v. Carson*, 520 F. App'x 874, 897-98 (11th Cir. 2013) (finding that the "fact that the jury instructions changed the 'and' to 'or' in the list of controlled substances did not change the elements of the offense. . . . A conspiracy to possess with the intent to distribute any of the four controlled substances listed in the indictment could support a conviction" in a federal drug conspiracy.). Accordingly, adding the conjunctive "and hydrocodone" to the verdict form or jury instructions is not necessary.[5]

---

[5]On January 15, 2015, the government circulated a revised version of the instructions for Count Three. The version attempts to further clarify what the jury must find with respect to controlled substances. The court finds the revised version is a better version of this instruction, and it will be incorporated into the final version of the jury instructions. This version of the instructions for Count Three will be incorporated for the time being, pending any changes necessitated by the court's resolution of docket number 1180.

Defendants also object to the government's use of the phrase and concept of reasonable foreseeability in Count Three of the verdict forms. The government initially proposed the following verdict question:

> With respect to Count Three against defendant [Name] was at least 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine attributable to the defendant as a result of his own conduct and the conduct of other conspirators reasonably foreseeable to him?

Defendants suggest instead that the question read:

> With respect to Count Three against defendant [Name], was there at least 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and hydrocodone?

Defendants' suggestion would eliminate the end of the question, that is, "attributable to the defendant as a result of his own conduct and the conduct of other conspirators reasonably foreseeable to him." In an attempt to reach a compromise, the government then suggested this language:

> With respect to Count [One or Three] against Defendant [Name], did the defendant agree that at least 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine was or would be involved in the conspiracy?

In addition to their argument regarding hydrocodone, Defendants maintain their objection to the inclusion of "or would be." The inclusion of "or would be" is consistent with the court's previous rulings regarding this language, which is itself in accordance

with general *Pinkerton* liability.[6] The court overrules this objection and will use the government's modified version of the instruction.[7]

### E.  Docket Number 1175

Defendants object to the government's requested instruction regarding the RICO conspiracy interstate commerce requirement.  (Dkt. # 1175.)  Relying on *Waucaush v. United States*, 380 F.3d 251 (6th Cir. 2004), Defendants argue that the relevant jury instruction should include language that "non-economic activities on the other hand, must have a substantial effect on commerce."  (Dkt. # 1176, Pg. 13734.)

*Waucaush*, however, is inapplicable to the facts of this case.  *Waucaush* involved an organization, the Cash Flow Posse ("CFP"), which "murdered, conspired to murder, and . . . assaulted with intend to murder, members of two rival gangs that sought to expand their operations in Detroit."  *Waucaush*, 380 F.3d at 243.  *Waucaush*'s holding hinged on the fact that "there [was] no evidence . . . that the CFP was involved in any sort of economic enterprise."  (*Id.* at 256.)   Indeed, the holding of *Waucaush* is specifically limited to cases "where the enterprise itself did not engage in economic

---

[6]"Under *Pinkerton v. United States*, 328 U.S. 640, 646-47, a coconspirator can be held responsible for the substantive offenses of other coconspirators." *United States v. Lawson*, 872 F.2d 179, 182 (6th Cir. 1989).  As the Sixth Circuit has explained, "[i]n *Pinkerton*, the Supreme Court held that the crime of conspiracy does not merge into the completed substantive offense, and, thus, the foreseeable crimes committed by a coconspirator in the furtherance of the conspiracy may be imputed to the other coconspirators. *Id.* (citing *Pinkerton*, 328 U.S. at 647). "[T]he overt act of one conspirator is imputed to the other coconspirators because each conspirator is in essence the agent of the other." *Id.* (citing *Pinkerton*, 328 U.S. at 646-47).

[7]The court had already held that "would be" language to be appropriate during a series of conferences the week of January 5, 2015.  This finding also resolves the first objection found in Docket Number 1178.

activity." (*Id.*) The government does not allege that the DDMC was that sort of enterprise, so the Defendants' proposed instruction is inappropriate.

A judge of this court faced a similar objection last year in *United States v. Norwood*, No. 12-cr-20287, 2014 WL 36559526 (E.D. Mich Jul. 22, 2014) (Goldsmith, J.). Rejecting the Defendant's proposed instruction that "referenced a 'substantial effect on Interstate Commerce,'" *id.* at *5, the court in *Norwood* noted that *Waucaush* applied only when "an enterprise engages only in violence." *Id.* (emphasis added). Citing evidence at trial "that the alleged enterprise trafficked drugs, which is economic activity that has effects on interstate commerce," *id.*, the court accepted the government's proposed instructions, which tracked the Seventh Circuit pattern instructions.

Because the government's evidence portrays an organization involved in much more than an enterprise whose activity was intrastate, non-economic, and engaging only in violence, *Waucaush* does not apply, and the Defendants' objection shall be overruled.

### F. Docket Number 1177

Next, Defendants challenge the government's proposed language regarding the definition of "evidence" on the ground that the bolded language below suggests to the jury that defense counsel may not argue that "reasonable doubt exists based on a lack of evidence." (Dkt. # 117, Pg. ID 13742.)

> (1) You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.
>
> (2) The evidence in this case includes only what the witnesses said while they were testifying under oath; the exhibits that I allowed into evidence; all

stipulations that the lawyers agreed to; and any facts that I have told you to simply assume had been proven.

(3) Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. The indictment is not evidence. My legal rulings are not evidence. And my comments and questions are not evidence. **Do not speculate about what some potential witness who did not testify might have said or what some potential exhibit that was not introduced might have shown. Such things that are not received in evidence are not evidence, and you are bound by your oath not to let them influence your decision in any way.**

(4) Make your decision based only on the evidence, as I have defined it here, and nothing else.

(Dkt. # 1177, Pg. ID 13740-41 (emphasis added).)

This language, which is part of the court's standard instructions, in no way suggests that reasonable doubt could not arise from a lack of evidence. It merely directs the jury to avoid speculating about the substance of potential testimony and potential exhibits that were not presented into evidence. The language does not prevent defense counsel from arguing generally that a lack of evidence on a particular element can give rise to reasonable doubt. In addition, the standard instruction defining reasonable doubt includes a recognition that doubt may arise from a lack of evidence. Accordingly, defense counsel's objection to the language regarding the definition of "evidence" is overruled.

### G.  Docket Number 1178

In docket number 1178, Defendants set forth two different objections. First, Defendants object to the use of "would be" in the proposed jury instructions. The court has already resolved this issue. Next, Defendants challenge, generally, the instructions to Count Three and argue that their version of Count Three should be accepted.

Defendants present no additional arguments other than those, presumably, set forth in other documents and previously addressed by this court. The court interprets this current objection as one preserving their general objection to the government's Count Three instruction and overrules it for the reasons already expressed.

### H. Uncalled Witness Availability

Relatedly, Defendants take issue with the government's proposed language regarding "Uncalled Witness Availability." Defendants first set forth this argument, on the record, during the January 9, 2015 status conference. Most pointedly, Defendants challenged whether the court should instruct the jury that "each party had an equal opportunity to call witnesses," and that "[t]heir absence should not affect your judgment in any way." The court gave its preliminary inclination that the first of these instructions should be deleted and invited defense counsel to submit briefs on the issue. Although this precise issue was not briefed, counsel has been engaged in ongoing negotiations with the government. During the most recent conference, the parties[8] reached an agreement about the issue which satisfies their concerns. First, the government agreed to excise both challenged statements, leaving the final instruction to read:

> There are several persons whose names you have heard during the course of the trial but who did not appear here to testify, and one or more of the witnesses referred to their absence from the trial. You should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.
>
> You should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

---

[8] All counsel were invited to participate. In attendance were the attorneys for the government and the attorneys for the two Defendants who raised the concern about the instruction: Defendant Witort, Defendant Drozdowski.

11

> You also heard that a person named Robert McClure was unavailable to testify because he had died. You should not draw any inferences or reach any conclusions regarding his death, nor should you speculate about the manner or cause of his death.

Second, the parties reached a general understanding regarding closing arguments. The government recognizes that Defendants may argue "lack of evidence" by focusing on the lack of corroboration respecting certain events, but believes it would be objectionable for Defendants to invite the jury to speculate about why a particular witness was not called, or what a particular witness would say. The government expressed that it was unlikely to object if Defendants' closing arguments stayed closer to the more generic, "lack of evidence" type of argument, but that if Defendants argument ventured too close to inviting speculation regarding the failure to call a particular witness, especially if the witness was equally available or unavailable to both sides, the government would likely object and request that the court instruct the jury that each side had an equal opportunity to call witnesses. After this general agreement, Defendants' concerns regarding the unavailable witness instruction appeared to have been alleviated. The key point, it seems to the court, is that argument that specifically ascribes, or that may be reasonably interpreted as ascribing, an adverse inference from a purported failure by a party to call a witness equally available (or unavailable) to either side is most likely to strike the nerve the government points out here, and most likely to prompt a clarification to the jury from the bench. *United States v. Blakemore*, 489 F.2d 193, 196 (6th Cir.1973); *United States v. Martin*, 696 F.2d 49 (6th Cir.), *cert. denied*, 460 U.S. 1073 (1983).

## II. CONCLUSION

For the reasons above, the Defendants' objections [Dkt. ## 1171, 1172, 1173, 1174, 1175, 1176 & 1178] are RESOLVED as set forth in the body of this order and TERMINATED. The government is INSTRUCTED to revise the most recent version of the instructions consistent with these findings and circulate a draft to Defendants and the court within 24 hours.

                                                 s/Robert H. Cleland
                                                 ROBERT H. CLELAND
                                                 UNITED STATES DISTRICT JUDGE

Dated: January 16, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 16, 2015, by electronic and/or ordinary mail.

                                                 s/Lisa Wagner
                                                 Case Manager and Deputy Clerk
                                                 (313) 234-5522