**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**
_____

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                  Criminal No. 11-20129
                                                                                                                                                                       Criminal No. 11-20066

SCOTT WILLIAM SUTHERLAND, et al.,

    Defendants.
                                                                           /

**ORDER RESOLVING GENERAL SENTENCING ISSUES FOR TRIAL DEFENDANTS**

Before the court are competing memoranda submitted by counsel regarding general sentencing issues. The Government filed an opening brief directed at sentencing issues in common for the following Defendants in this matter, all of whom proceeded to trial and were found guilty on various counts: Patrick Michael McKeoun, Jeff Garvin Smith, Paul Anthony Darrah, Cary Dale Vandiver, Vincent John Witort, David Randy Drozdowski, Victor Carlos Castano, Michael Kenneth Rich (collectively, the "Trial Defendants").

All eight Trial Defendants filed a joint response, and the Government filed a reply. This order resolves those issues raised in the Governments brief and directs the next stage of briefing.

### I. GENERALIZED FINDINGS

Trial Defendants first object to the court's attempt to streamline these proceedings through the mechanism of resolving common sentencing issues before conducting individualized sentencing proceedings. The court rejects this objection as form over

substance. While it is true that the court must make individualized findings as to each Defendant for sentencing purposes, this does not prevent the court from attempting to narrow the sentencing issues by resolving general issues up front. A preliminary review of PSIR objections made clear that multiple Defendants were making substantially similar objections to common issues. Various Defendants, for example, objected to the standard of review, suggesting to the court that it could not engage in fact-finding by a preponderance of the evidence in sentencing, even for matters which do not increase the statutory maximum or the mandatory minimum, but for, essentially, *any* fact which had the effect of raising the advisory guideline range. Multiple Defendants also objected to the manner in which relevant conduct was attributed, inviting the court to conduct mini-trials which would largely reproduce the evidence already received at trial, but under the theory that evidence must be taken at sentencing separately in order to constitute "individualized findings."

The court disagrees with Defendants re-casting of the court's obligations. While both trials included some evidence which was largely directed at individual Defendants, and while the jury convicted the Defendants on an individual basis, the court need not ignore the obvious fact that in both trials substantial evidence was adduced which was relevant to *all* of the Trial Defendants, particularly with respect to the mechanics, operation, initiation, and operation of the club membership of Devils Diciples Motorcycle Club ("DDMC") and how the DDMC, in the particular situation of these convicted Defendants, engaged in a RICO conspiracy.

The trials also included substantial evidence of the knowledge and understanding of each of the Trial Defendants of the goals, methods, and operation of the RICO

2

conspiracy. Remaining cognizant of the court's duty to make individualized findings for purposes of sentencing, the court also recognizes the vast amount of evidence detailing the full knowledge and consent of the Trial Defendants to engage in the RICO conspiracy, as reflected by their guilty verdicts, and will rely, in part, on that general evidence in making its necessary sentencing findings. In order to make those findings, the court must first, of course, determine the relevant standard of review. There is nothing improper in reaching that conclusion of law with respect to all Trial Defendants, each of whom has had notice and opportunity to respond.

## II.  BURDEN OF PROOF

The Government firsts asks the court to declare the burden of proof when establishing relevant conduct for racketeering activities under Count One, the RICO Conspiracy charges. Though Trial Defendants urge the court to adopt their view of a heightened standard, there is no serious dispute that the burden of proof applicable for sentencing issues is preponderance of the evidence, and the court will therefore adopt this standard.

In the preliminary objections to various Presentence Investigation Reports ("PSIRs"), some of the Trial Defendants suggested that their sentence could not be increased based on racketeering activities without a specific jury finding of guilty beyond a reasonable doubt as to each predicate act. Defendants cited *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000) for the general proposition that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." In their Joint Memorandum of Law, Trial Defendants concede that "[c]urrently the weight of

3

authority is that a jury verdict is not required to score relevant conduct that does not raise the statutory maximum or impose a mandatory minimum sentence." (Pg. ID 29278.) Trial Defendants continue, saying "[r]ather, relevant conduct can be proved for sentencing by the prosecutor by a preponderance of the evidence; the prosecutor is required to prove the relevant conduct at sentencing regardless of the jury's verdict." (Pg. ID 29278.)

Despite this concession, Defendants set forth two arguments in their brief. First, even after acknowledging that the current state of law does not require jury findings except for facts that increase the statutory maximum sentence (*Apprendi*) or the mandatory minimum sentence (*Alleyne v. United States*, ___ U.S. ___, 133 S. Ct. 2151 (2013)), Defendants argue that the "spirit" of the Fifth and Sixth Amendment demand more. According to the Defendants, in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court correctly recognized that the calculation of federal sentencing guidelines violated the Constitution, but *incorrectly* cured that violation by making the guidelines remedial. Defendants assert that each and every fact that has the effect of raising the guideline range should be found by a jury beyond a reasonable doubt. Defendants contend:

> Of course, the worn, and logically flawed, refrain from an AUSA, who refuses to allow a jury to determine the aggravating fact perhaps for strategic reasons or a belief that the greater fact [15 Kg] could not be proven to a jury beyond a reasonable doubt, is that *[Booker]* resolved all objection to any sentence that is below the statutory maximum by making the guidelines advisory. *Booker* did hold that judicial fact-finding that increased a statutorily mandated guidelines sentence violated the Sixth Amendment, as part of the remedial opinion, and that advisory guidelines would cure this defect. However, the reasoning upon which the *Booker* holding is based is flawed and has not cured the defect.

4

(Pg. ID 1917.)   Defendants continue that the "trend of authority" is to recognize that *Booker* was misguided and to call for greater protections—and higher evidentiary standards—under the Fifth and Sixth Amendments. As Defendants describe it, the effect of the guidelines calculation is a "presumptively reasonable" range that, though cast as "advisory," are effectively binding on the court and thus violates *Apprendi* and *Alleyne.* The court disagrees. The court also finds the argument irrelevant. Though a "trend" may be an academically interesting law review note, the court is not bound by either such a "trend of authority," or by the musings in dicta, dissents, or concurrences, even of the Supreme Court. The court is bound by the *holdings* of the United States Supreme Court. The current state of the law is that the sentencing guidelines calculations are advisory, and the court treats them as such, under the clear guidance of the Supreme Court in *Booker*.

Next Defendants argue that, even when there is a special finding by jury of relevant conduct, the court must independently find that relevant conduct by a preponderance of the evidence. Defendants suggest that the jury's special finding might not be supported by sufficient evidence, thus the court cannot rely on it. Defendants invite the court into a hypothetical sentencing world. Though the court has not yet ruled on the pending post-trial motions, it will shortly, likely finding that the verdicts were well supported by sufficient evidence.

In the event that the court were to grant such motions, the court would necessarily revisit the issue. Meanwhile, the verdicts stand. More importantly, the issue is academic. When determining relevant conduct for sentencing purposes, the court does not look merely at verdicts, but beyond the jury verdicts to the evidence on which those verdicts

5

were based.

"[U]nder RICO, the maximum sentence that may be imposed is twenty years unless the jury finds that a defendant committed a predicate act that carries the possibility of a life sentence." *United States v. Stone*, 244 Fed. Appx. 720, 722 FN 1 (6th Cir. 2007) (citing 18 U.S.C. § 1963(a)). "In such a case, the maximum penalty for a RICO violation is life imprisonment." *Id.* In this case, the jury rendered special findings that each Trial Defendant agreed that at least 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine (or 50 grams of methamphetamine) was or would be involved in the RICO Conspiracy. This racketeering activity qualifies as a predicate act that carries the possibility of a life sentence. Thus, the court holds that the statutory maximum, *as specifically supported by the jury findings*, is life imprisonment.

Each Trial Defendant may receive a sentence up to life imprisonment, without running afoul of *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000). Needless to say, in an individual case, a life sentence may be deemed inappropriate.

At sentencing, the court intends to carefully review each Defendant's PSIR, resolve any objections, and arrive at a correctly calculated guideline range which the court will consider, as required, in preparation for imposition of sentence.

All parties, and the court, agree that it is the Government which bears the burden of proof to establish relevant conduct for racketeering activities by a preponderance of the evidence.

### III. STANDARD FOR RACKETEERING ACTIVITIES

Racketeering activity constitutes "underlying racketeering activity" under U.S.S.G. § 2E1.1 for the purpose of calculating a defendant's base offense level for a RICO conviction if it constitutes relevant conduct as defined in U.S.S.G. § 1B1.3. *See Tocco*, 200 F.3d at 430 (holding that the relevant

6

> conduct rules apply to the determination of "underlying racketeering activity"). Relevant conduct includes, in pertinent part: (1) "all acts or omissions" that the defendant "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused"; and (2) "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity," that occurred during, in preparation for, or in the course of attempting to avoid detection or responsibility for the RICO conspiracy. U.S.S.G. § 1B1.3(a)(1)(A) & (B). "The existence of relevant conduct is determined at sentencing by a preponderance of the evidence." Corrado I, 227 F.3d at 542.

United States v. Tocco, 306 F. 3d 279, 286 (6th Cir. 2002) ("Tocco II"). Thus, "in order to hold a defendant accountable for the acts of others [under U.S.S.G. §1B1.3(a)(1)(B) ], a district court must make two particularized findings: (1) that the acts were within the scope of the defendant's agreement; and (2) that they were foreseeable to the defendant." United States v. Campbell, 279 F.3d 392, 399-400 (6th Cir. 2002) (quoting United States v. Studley, 47 F.3d 569, 574 (2d Cir.1995)).

With respect to the first prong of the test, the Sixth Circuit has held that "[i]In order to determine the scope of the defendant's agreement, the district court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others. The fact that the defendant is aware of the scope of the overall operation is not enough to satisfy the first prong of the test and therefore, is not enough to hold him accountable for the activities of the whole operation." Tocco, 306 F.3d at 289.

Leaving aside Defendants' rejected argument that the court should not engage in *any* fact-finding at sentencing, all parties agree that if the court does engage in fact-finding, these are the standards to employ. The Government has attempted to narrow the issues at sentencing by urging the court to adopt broad findings of fact which apply to all Trial Defendants. Defendants, conversely, argue that adopting any facts on a general basis will violate the court's duty to make sentencing determinations on an

7

individual basis. Defendants argue that the principles of *Tocco II* mandate that each Defendant's relevant conduct must be determined on a case-by-case basis.

The court is certainly sympathetic to the Government's attempts to streamline this process, and is tempted to render various findings of fact, applicable to all Trial Defendants, in advance of individual sentencings. The court is also cognizant of its duty to assess each Defendant individually, and must be sensitive to the concerns raised by Defendants to not lump all Defendants into one category for sentencing.

Nonetheless, the court can make certain observations, which can be more thoroughly developed during the individual sentencings. The court is not self-bound by these mere observations, but offers them now to aid the parties as they prepare for sentencing. Throughout this process, the court will hold the Government to its burden of proving relevant conduct by a preponderance of the evidence.

*First*, in determining the racketeering activities for which a particular Trial Defendant will be held accountable, the court will start by considering the date the Defendant became a prospective and/or a fully-patched member of DDMC. The court heard substantial evidence at both trials justifying a finding, by a preponderance of the evidence, that by the time a Defendant became a fully-patched member of DDMC he was well aware that he was not just "joining a club," but was in fact entering into a criminal conspiracy.

Thus, although the court will make findings as to each Defendant after reviewing the relevant PSIRs, a logical and factually sensible starting point for determining the point at which a Defendant *could* be held accountable for racketeering activities will be the date of entry into the DDMC. In some cases, that date may be later, or earlier.

8

The court will not hold a Trial Defendant accountable only for the racketeering activities in which he directly participated, but all those activities which were within the scope and in furtherance of the conspiracy. In so determining, the court will consider the abundant testimony concerning the culture of the DDMC, the rules by which members were expected to behave, the ways the rules were enforced, the consequences of leaving the club, and the means and methods that the clubs goals were effectuated. Finally, this evidence will also be considered when determining foreseeability. And the court will find particularly relevant the testimony regarding the required probationary periods before almost any prospective member became a full member of the club; also significant is the indoctrination through which prospective members passed in order to learn the rules, goals, and culture of the DDMC, and by extension the RICO conspiracy. Further relevant is the official position of certain of the Trial Defendants, acting as long-term organizers of the enterprise, actively supervising and approving of the activities of others in the conduct of the organization's affairs. These observations are not final rulings, but are intended to streamline and assist the parties as they proceed through the sentencing stages.

Updated PSIRs will be presented to allow for any significant changes in circumstance or the law since the original production.

The court requests the Government to examine the factual circumstances of each Trial Defendant and prepare an argument in the form of a chart as to which particular racketeering activities are fairly attributable to the particular Trial Defendant. Mere membership in DDMC does not suffice to establish foreseeability.

Conversely, the court expects defense counsel to make individual objections. Blanket objections that purport to require the court to conduct an individual mini-trial as to

each Defendant will be rejected. Likewise, objections that fly in the face of the legal conclusions made in this opinion–legal standards which, at heart, Defendants do not dispute–will be disposed of accordingly.

All parties will present objections in good faith, without adding to the delay already experienced, and will avoid vexatiously multiplying proceedings.

The first attempt at objections to PSIRs were largely inconsistent with the holdings in this opinion. The court anticipates that, with some of these legal issues resolved, and with proper focus, the PSIRs and objections can be substantially simplified.

To that end, the process should start anew., as noted above, a revised PSIR for each Trial Defendant will be prepared and circulated. New dates will be given for objections and responses. The court will received the objections and responses, and set sentencing dates to begin sentencings as expeditiously as possible.   Accordingly,

IT IS ORDERED that all current PSIRs and objections are DEEMED MOOT.   The court will issue a separate order setting forth the responsibilities of the probation department and counsel with respect to sentencing obligations.

  s/Robert H. Cleland  
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:   October 16, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 16, 2017, by electronic and/or ordinary mail.

  s/Lisa Wagner  
Case Manager and Deputy Clerk
(810)292-6522

S:\CLELAND\JUDGE'S DESK\C3 ORDERS\11-20129.MCKEOUN.SENTENCINGISSUESTRIALDEFENDANTS.RHC.2.DOCX

10